NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

VALERIE L., )
                           )
           Appellant, )
                           )
      v. )
                           )
STATE OF ALASKA, DEPARTMENT )
OF FAMILY & COMMUNITY )
SERVICES, OFFICE OF CHILDREN'S )
SERVICES, )
                           )
           Appellee. )
                           )

Supreme Court No. S-18891

Superior Court Nos. 4FA-21-00179/00180/00181/00182 CN

MEMORANDUM OPINION AND JUDGMENT*

No. 2036 – July 10, 2024

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Patricia L. Haines, Judge.

Appearances: Monique Eniero, Anchorage, for Appellant. Jessica M. Alloway, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

# I.  INTRODUCTION

A mother appeals the termination of her parental rights.  She argues that the Office of Children's Services (OCS) failed to make reasonable efforts to reunify her family.  We affirm the termination order.

# II.  FACTS AND PROCEEDINGS

## A.  Facts

Valerie L.[1] and her husband Greg are the parents of nine children, seven of whom they adopted.  At the time that OCS engaged the family, four of the children were adults living outside the home, while five were minors living in the home.

Three of Valerie's adult children went to the police in October 2021 to report that Valerie was physically abusing and neglecting their younger siblings.  OCS took emergency custody of four of the children[2] and filed an emergency petition to adjudicate them in need of aid.  After Valerie and Greg stipulated the children were in need of aid, the court awarded OCS temporary custody.

OCS created case plans for Valerie and Greg in December 2021.  Valerie's case plan required her to participate in a risk assessment to help OCS identify appropriate services.  But Valerie insisted on speaking to an attorney before signing a release of information that would allow OCS to set up a referral for this assessment.  She eventually signed the release and agreed to undergo an assessment with a provider recommended by her attorney.  Valerie began the assessment process with that provider but did not complete it.  After she was arrested and charged in March 2022 for assaulting her children, she rescinded her release.  OCS never received a copy of any documents related to that assessment because the provider shredded them after Valerie requested the assessment not be distributed.

---

[1]  We use pseudonyms to protect the family's privacy.

[2]  The fifth, who was 17 at the time of the report, refused to go with OCS and remained in the home subject to OCS supervision until she turned 18.

OCS informed Valerie in August 2022 that it continued to be unable to identify appropriate services for her without a completed risk assessment. Around this time, Valerie completed a risk assessment with a second provider who concluded that Valerie presented no risk of abuse or neglect and made no recommendations for services. The family's primary caseworker found these conclusions difficult to reconcile with the descriptions of extreme physical abuse that OCS had received from Valerie's children. The limited release of information Valerie signed with the second provider prevented OCS from speaking to him about the child in need of aid proceedings or providing him with collateral information about Valerie's case. Based on these circumstances, OCS requested that Valerie engage in counseling.

Valerie stated that she wanted to attend in-person, faith-based counseling. OCS identified three counseling providers in Fairbanks, but all three had conflicts of interest. Given that the few faith-based counselors in Fairbanks capable of handling serious cases of child abuse all had conflicts of interest, OCS identified other counseling services that met one or the other of Valerie's conditions, including faith-based counselors she could meet with via telehealth. Valerie did not agree to any of the options offered by OCS and ultimately did not engage in any counseling.

### B.    Proceedings

OCS petitioned to terminate Valerie and Greg's parental rights in February 2023. The petition alleged that Valerie physically abused and neglected the children and that Greg was aware of the abuse and failed to intervene to stop it. After a multi-day trial, the superior court found that the children were in need of aid because they "suffered and are at substantial risk of suffering physical harm, mental injury, and neglect."[3] The court also found that OCS had engaged in reasonable efforts to reunify

---

[3]    *See* AS 47.10.011(6), (8), (9).

the family,[4] that Valerie and Greg failed to remedy the conduct that placed the children at substantial risk of harm, and that termination of parental rights was in the children's best interests.

Valerie appeals, challenging only the superior court's reasonable efforts finding in the termination order. Greg does not appeal.

## III. STANDARD OF REVIEW

Whether OCS has made reasonable reunification efforts is a mixed question of law and fact.[5] We review factual findings for clear error and apply our independent judgment to questions of law.[6] Whether the superior court's factual findings satisfy the applicable statutes and rules is a question of law reviewed de novo.[7]

## IV. DISCUSSION

Before the superior court may terminate parental rights, it must find by clear and convincing evidence that OCS made reasonable efforts to reunify the family.[8] The court must first identify the problem that caused the children to be in need of aid, then determine whether OCS's efforts were reasonable in light of the surrounding

---

[4] Although two of the children are Indian children within the meaning of the Indian Child Welfare Act (ICWA), Valerie and Greg are non-Native adoptive parents. *See* 25 U.S.C. § 1903(4), (9). The superior court concluded that the "reasonable efforts" standard, rather than ICWA's "active efforts" standard, governed this case. Valerie does not challenge that conclusion on appeal.

[5] *Duke S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 433 P.3d 1127, 1132 (Alaska 2018).

[6] *Id.*

[7] *Id.*

[8] AS 47.10.086, .088(a)(3); CINA Rule 18(c)(2)(A).

circumstances.[9] When the record provides clear support for a trial court's findings, we will not reweigh the evidence.[10]

Valerie challenges the superior court's determination that OCS made reasonable efforts to reunify the family. She argues that there was no evidence that, after OCS determined no faith-based counselors were available in Fairbanks, the agency continued to search for such providers or considered paying for Valerie's travel to meet with a faith-based provider elsewhere. These failures, she argues, amount to a failure to satisfy the reasonable efforts standard.

Valerie's argument divides OCS's efforts into two time periods: its initial efforts to determine whether an in-person, faith-based provider existed in Fairbanks and its subsequent efforts after it determined no such provider existed. She argues that OCS's efforts during the latter period were unreasonable. But we review OCS's efforts holistically, and our analysis is not limited to a particular time frame.[11]

Whether OCS's efforts are reasonable depends in part on the parent's level of cooperation with OCS and the parent's willingness to participate in treatment.[12] OCS must identify the services that will assist the parent and refer the parent to those services,

---

**9** *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1262 (Alaska 2010).

**10** *Kylie L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 407 P.3d 442, 450 (Alaska 2017).

**11** *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003); *Barbara P.*, 234 P.3d at 1262 ("[W]e have affirmed a finding that OCS made reasonable efforts overall even when its efforts were not reasonable during a particular period of time.").

**12** *Sylvia L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 432 (Alaska 2015).

but it is not obligated to force an uncooperative or unwilling parent to engage in services.[13] OCS's efforts must be reasonable, but need not be perfect.[14]

The superior court found that OCS made timely, reasonable efforts to reunify the family and "actively identified, offered, and attempted to connect" Valerie with services. The court found that Valerie's insistence on in-person, faith-based counseling, even though she knew such counseling was not available in Fairbanks, coupled with her "unwillingness to consider the alternatives" OCS identified, "hindered any possibility of receiving services that may have mitigated the safety concerns and allowed the children to return home."

These findings are supported by the record. An OCS caseworker testified that she attempted to arrange counseling for Valerie with several faith-based providers in Fairbanks, but they all had conflicts of interest.[15] She explained that, after a diligent search, OCS concluded there were simply no conflict-free providers in Fairbanks that met Valerie's criteria. Although the caseworker proposed other options, including faith-based counseling via telehealth, the record shows that Valerie refused to engage with services unless they were both faith-based and in-person. After OCS made reasonable efforts to identify and refer Valerie to appropriate services, it was not obligated to force her to engage.[16] Her refusal to engage with services does not make OCS's efforts unreasonable.

---

[13] *Annette H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 450 P.3d 259, 267-68 (Alaska 2019); *see also Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 290 P.3d 421, 432 (Alaska 2012) (explaining that OCS has "some discretion both in determining what efforts to pursue and when to pursue them").

[14] *Annette H.*, 450 P.3d at 267-68.

[15] We afford "particular deference" to factual findings based on oral testimony. *See State v. Grubb*, 546 P.3d 586, 603 (Alaska 2024).

[16] *See Annette H.*, 450 P.3d at 268.

Valerie faults OCS for failing to continue to search for available faith-based providers in Fairbanks after it initially determined that such providers did not exist. But she does not identify any providers that OCS overlooked. As the superior court found, there are "limited counseling services available in Fairbanks, Alaska, and fewer still that are faith-based." Under the circumstances, it was reasonable for OCS to attempt to identify alternative providers that met some of Valerie's preferences, instead of continuing to search for one that, in all likelihood, did not exist.

In any event, we examine OCS's efforts in their entirety, not in isolation.[17] Valerie does not challenge the superior court's finding that OCS "appropriately focused many of its efforts on providing services to the children." And she does not explain why any purported deficiency in OCS's efforts to locate a counselor should outweigh OCS's other efforts to support the family.

Valerie also argues OCS failed to make reasonable efforts because it did not consider paying for her travel outside of Fairbanks to meet with a faith-based counselor. She cites our decision in *Shirley M. v. State, Department of Health & Social Services, Office of Children's Services* for the proposition that OCS is "required to take into account the parent's limitations or disabilities and make any reasonable accommodations."[18] This obligation to make reasonable accommodations stems from Title II of the Americans with Disabilities Act (ADA), as well as federal and OCS regulations that forbid discrimination against individuals with disabilities, and applies only when a parent has a disability.[19]

---

[17]     *See Frank E. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 77 P.3d 715, 720 (Alaska 2003).

[18]     342 P.3d 1233, 1242 (Alaska 2015).

[19]     *See Lucy J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 244 P.3d 1099, 1115-16 (Alaska 2010).

Valerie's preference for certain forms of counseling, and her unwillingness to consider other options, is not a disability under the ADA or the relevant federal and state regulations.[20] The circumstances in her case bear no resemblance to those in *Shirley M.*, and the contention that OCS was obligated to pay for her travel as a reasonable accommodation is unavailing.

## V.  CONCLUSION

We AFFIRM the superior court's termination order.

---

[20]  *See* 42 U.S.C. § 12102; 28 C.F.R. § 35.108 (2023); ALASKA OFF. OF CHILD.'S SERVS., CHILD PROTECTION SERVICES POLICY MANUAL § 6.1.10 (2024), http://dpaweb.hss.state.ak.us/training/OCS/cps/index.htm; *see also* Administrative Order No. 129 (Apr. 22, 1992), https://gov.alaska.gov/admin-orders/administrative-order-no-129/ (directing agencies to adopt policies to ensure compliance with ADA and adopting federal definition of "disability").